to avoid such an inference and repudiate such an intention, he signed not only at the other end of the note, but across it, in a position reverse to that of the printed waiver.

*Judgment reversed and final judgment for plaintiff in error.*

Funk and Pardee, JJ., concur.

---

Louisville & Nashville Rd. Co. *v.* Greene, Admx.

*Negligence—Locomotive engineer killed in train collision at interlocking crossing—Evidence that caution signal displayed until stop signal invisible—Questions of fact presented for jury where evidence conflicting—Oral testimony inconsistent with mechanical operation of signals and interlocking devices—Evidence admissible that signal changed to stop after proceed signal passed, when—Charge to jury—Special request relating to absence of interlocking device properly refused, when—General charge considered as entirety—Opening statement to jury not prejudicial—Reference to deceased's family cured by court cautioning jury—Argument to jury not prejudicial—Jury instructed to disregard statement that deceased scalded to death—Reference to opportunities for advancement in railroad service not prejudicial, when—Law of state where accident occurred governs liability and damages—Kentucky law limits recovery to compensation for destroying deceased's earning power—Facts to be considered in determining such compensation—Remittitur cannot be granted where verdict result of passion and prejudice—Verdict of $40,000 for locomotive engineer's death not excessive, when.*

1. In action for death of locomotive engineer in collision with another locomotive at track intersection, evidence that "caution" light was displayed until he reached point from

which "stop" light then displayed was invisible *held*
sufficient to warrant submission of cause to jury.

2. Questions of fact, as to which evidence is conflicting, are
   properly left to jury.

3. In action for locomotive engineer's death in collision with
   locomotive on intersecting track, method of operating sig-
   nals and locking device *held* fact questions for jury as
   against contention that plaintiff's evidence as to signals
   displayed was contradicted by evidence as to operation
   of locking device.

4. In action for locomotive engineer's death in collision with
   locomotive on intersecting track, defendant's evidence that
   "stop" signal was showing after wreck warranted plaintiff
   in introducing evidence that it was possible for "proceed"
   signal to be changed as decedent neared or reached cross-
   ing because of absence of interlocking device on his side
   thereof.

5. In action for death of locomotive engineer in collision with
   locomotive on intersecting track, refusal of defendant's
   special charges, precluding consideration of absence of
   interlocking signal device on decedent's side of intersection,
   *held* not error, in view of charge not to consider as negli-
   gence whether circuit was properly constructed.

6. The court's general charge must be taken as a whole in
   determining whether the issues were properly stated.

7. In death action, court's caution to jury, after first witness'
   testimony, in conformity to prior request by counsel for
   defendant, not to consider statements by plaintiff's counsel
   in opening statement as to deceased's family, *held* sufficient
   to cure any impropriety in his reference to deceased's
   minor daughter, in whose behalf suit was brought.

8. In action for locomotive engineer's death in collision with
   locomotive on intersecting track, statement by plaintiff's
   counsel in closing argument that deceased was scalded to
   death *held* not ground for reversal of judgment for
   plaintiff, in view of other engineer's testimony that de-
   ceased was scalded, evidence as to steam around over-
   turned engine, and court's instruction to disregard such
   statement.

9. In action for death of locomotive engineer in collision with
   locomotive on intersecting track, reference by plaintiff's
   counsel, in closing argument, to opportunities for advance-

ment, and mention of persons who had progressed to high positions, in railroad service, *held* not ground for reversal of judgment for plaintiff, in absence of objection or request for instruction on such matter.

10. Law of Kentucky governs as to liability and measure of damages for death by accident occurring in such state.

11. Under law of Kentucky, damages recoverable for death are such sum, not exceeding amount claimed in petition, as will fairly and reasonably compensate decedent's estate for destruction of his power to earn money.

12. In estimating compensatory damages under Kentucky law. for death, jury may consider evidence of deceased's habits, character, physical condition, earning capacity, and probable duration of life, in order to determine what sum will compensate his estate for destruction of his earning power.

13. If verdict was given under influence of passion and prejudice, it is court's duty to set it aside and not grant a remittitur.

14. $40,000 damages awarded for death of locomotive engineer, who was 33 years old and earning about $2,200 per year, and was sober, industrious, in good health, and in line for promotion, *held* not excessive.

(Decided March 28, 1927.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Freiberg, Avery & Simmonds,* for plaintiff in error.

*Messrs. Nichols, Morrill, Stewart & Ginter,* for defendant in error.

BUCHWALTER, J. The action was for damages for wrongful death, and was brought by Dora B. Greene, as administratrix of the estate of William E. Greene, deceased, against the Louisville & Nashville Railroad Company.

The petition alleged that the defendant was a corporation under the laws of Kentucky, and was

operating a railroad at a point known as Latonia Depot, Ky., where it maintained and operated intersecting track lines, one known as the Louisville & Nashville track, running east and west, and the other as the Kentucky Central, running north and south; that the deceased was employed as a locomotive engineer by the Baltimore & Ohio Railroad Company, and was, on November 9, 1922, operating a locomotive, belonging to said company, at the intersecting tracks at Latonia Depot; that, because of the negligence of the defendant company at said point, on that day, he received injuries which caused his death a short time thereafter; and that deceased left as next of kin his wife, the administratrix aforesaid, and his minor daughter, in whose behalf this action is brought.

It further alleged that at said intersection defendant maintained a signal tower, where signals were displayed to engineers driving locomotives toward said intersection, to notify them whether the track was clear or closed.

Plaintiff further averred that as decedent was operating the locomotive northwardly on the Kentucky Central tracks, the agents of the defendant, operating the signal tower, displayed a yellow signal, indicating a clear track over the intersection; that when said locomotive was not more than 100 feet south of said intersection, the signal indicating a clear track was still displayed; that, relying on said signal, decedent drove his locomotive toward and across the intersection, when a locomotive, operated by the defendant, which was approaching eastwardly on the Louisville & Nashville track, ran into decedent's engine, upsetting same, and causing the injuries which resulted in his death.

The allegations of negligence are that the defendant had constructed the signal tower and signals operated therefrom in such a way as to make it difficult for engineers operating locomotives, approaching from the south, to see the signal, and that the agent of the defendant displayed a signal indicating that the locomotive operated by decedent had a clear right of way, and should proceed, when, as a matter of fact, another locomotive, operated by defendant, was approaching, and proceeded to cross the intersection.

Later, an amendment was filed to the petition, setting up the law of Kentucky, giving the right to maintain an action for wrongful death and the manner in which any sum recovered should be distributed.

The defendant, by answer to the amended petition, admitted the appointment of the administratrix; admitted that defendant was a corporation under the laws of Kentucky; that it maintained and operated a railroad with intersecting lines at Latonia Depot, Ky.; that there was a collision at said point; and that William E. Greene died as a result of the injuries received in said collision. It admitted that it maintained a signal tower for the control of trains moving over said intersecting tracks; admitted the laws of Kentucky, as pleaded; and denied all other allegations.

The answer further charged that decedent was guilty of contributory negligence in this, to wit, that he failed to keep a proper lookout for the "stop" and "go" signals, operated from the tower, which signals, at the time of the accident, and for a long time prior thereto, had been set in "stop" position for trains operating along the tracks on

which said Greene was operating a locomotive, and in a "go" position for trains operating east and west. It charged negligence in operating the locomotive up to and upon said intersection, when the signals were so set; it charged negligence for failure to bring his locomotive to a stop in proper position to see the "stop" and "go" signals, and in operating the locomotive at an excessive rate of speed as it approached the intersection.

Defendant then sets up the statute of limitations of Kentucky, and alleges that the amended petition was not filed within the time prescribed for the commencement of such actions.

Defendant further averred that:

"Under the law of Kentucky, the measure of damages for death, resulting from the wrongful or negligent act of another, is such sum as will fairly and reasonably compensate the estate of the decedent for the destruction of his power to earn money."

A reply was filed, denying that the decedent was guilty of contributory negligence, and denying each specific allegation of contributory negligence set forth in the answer; denying that the action was not filed within the statutory time; and also denying generally the other averments of the answer.

Upon trial, the jury returned a verdict for $60,000, the amount prayed for in the petition.

A motion for a new trial was filed, and overruled.

The plaintiff consenting to a remittitur of $20,000, judgment was entered for $40,000. To this judgment, error is prosecuted.

Several grounds of error are stressed; the first being that the verdict was not sustained by suffic-

ient evidence, and was manifestly against the weight of the evidence.

There was evidence offered as to the location of the signal arms, as to the various signals which were used, and to the effect that decedent was proceeding northwardly toward the intersection where the collision occurred, and was leaning out of his cab window looking toward the signal until he was at a point where the signal was hidden from his view. There was evidence offered that as he was proceeding toward the intersection, the yellow light was displayed on the lower cross-arm, and that this meant to proceed with caution; that such a signal did not mean caution as to trains on the intersecting track, but to look out for a train ahead on the same track and in the same block; and that when on the intersection the engine was struck by one of defendant's engines going eastwardly over the intersection.

There was sufficient evidence introduced therefore to warrant the submission of the cause to the jury.

The defense alleged and introduced testimony tending to show negligence on the part of the plaintiff, which either was the proximate cause of the injury, or contributed thereto.

Much of the evidence was conflicting, and the questions of fact, being in dispute, were properly left to the jury.

It is claimed that the oral evidence offered by plaintiff as to the signals was flatly in contradiction of the unalterable and inexorable evidence of the mechanical appliance, and therefore should have been disregarded, and that the physical facts demonstrated that such evidence was untrue.

We do not find such to be the fact.

The evidence as to the mechanical appliance was that, when the yellow or "proceed" signal was shown on the lower arm on the east and west track, the signal on the north and south track could only be red; that the signal on the lower arm on both tracks could be red, but both could not be yellow at the same time, because of the mechanical construction of the device; and that when the train on the east and west track passed the signal box, located 100 or more feet from the crossing, all of the signals were locked until after the train cleared the intersection.

However, it was contended by plaintiff, and brought out in the evidence of Arthur Fasig and others, that the signal on the northbound track could be changed up to the time the north-bound train approached and was on the intersection, and until the time that the engine reached the signal box on the north side of the intersection. So that the only time the signal would be locked, so that it could not be changed, was when a train approaching the intersection coming from the north, east, or west reached a point approximately 100 feet from the intersection. As there was no locking device on the south side of the intersection, a north-bound train could not lock the signal device until the engine had crossed the intersection. Therefore, as to this north-bound train, the fact that the light, after the train reached the intersection, was red or "stop" for northbound trains would not conclusively show that the light had been red for any particular distance before the north-bound train reached the intersection. There was evidence to the effect that it was possible to switch the lights

from yellow to red on the lower signal arm on the north-bound track, when an engine coming northwardly was so near the intersection that the engineer would not be able to see the changed signal.

The method of operating the signals and the operation of the device by which the signals were locked were proper questions of fact to be submitted to the jury.

On an examination of the record, we do not find that the verdict and judgment were manifestly against the weight of the evidence.

It was claimed, however, that evidence as to the interlocking device was improperly admitted, as this was not one of the elements of negligence relied on in the petition, and that it was highly prejudicial. This evidence was not introduced as a ground of negligence against the defendant, but as one of the physical facts existing at the intersection at the time of the collision. The defense introduced evidence to show that after the wreck the yellow or "proceed" signal was showing on the east and west track, and the red or "stop" signal was on the north-bound track, and, that, therefore, Greene must have disobeyed the "stop" signal, and was guilty of contributory negligence. The plaintiff then properly introduced evidence to show that, even though the "stop" signal was showing on the north-bound track after the collision, it still was possible for the yellow light to have been switched to red as Greene neared or reached the crossing, since there was no interlocking device on the south side of the intersection.

The court charged the jury that only the negligence set forth in the petition should be considered by them, and that the plaintiff would have to prove

that negligence to recover, and at the request of the defendant gave charge No. 1, which outlined what were the charges of negligence involved, and gave the following special charge No. 10:

"The defendant is not charged with any negligence in connection with the maintaining of the interlocking system at the scene of the collision. There is no claim by plaintiff in the petition that the circuit on the north-bound main should have begun south of the crossing. You will therefore not consider as a charge of negligence against the defendant whether or not the circuit was properly constructed."

We find no error in the admission of this evidence.

Defendant offered several special charges, known as Nos. 7, 8, and 9, which the court refused to give. They were offered in an endeavor to charge out of the case any reference to the interlocking device on the north-bound track.

However, the matters contained in these charges are covered by charge No. 10, and it was not error to refuse to give them.

Error is claimed in the general charge in that the issues were not properly stated. We consider that the charge of the court was sufficient to inform the jury as to the issues involved, and the special charges given set forth the negligence alleged and fully informed the jury as to these matters.

The charge must be taken as a whole, and, although defendant complains about the charge on contributory negligence, the court, on the request of the defendant, at the end of the general charge, gave a charge on contributory negligence, and asked

counsel if that covered the point, and counsel answered, "Yes." The special charges also covered the point of contributory negligence.

It is contended that counsel for plaintiff was guilty of misconduct in his opening statement and argument in that he referred to the daughter of decedent; in that he stated that deceased was scalded to death; in that he made reference to the fact that there was no interlocking circuit south of the intersection, and also referred to the opportunities for advancement, citing instances of persons in similar position who had risen to high office in railroad circles.

As to the reference to the family of deceased, this was alleged in the petition, and no motion was made to strike it out. When counsel first referred to it in his opening statement, no objection was made. On page 15 of the bill of exceptions, counsel objected and reserved an exception. And at page 38, the court, referring to the opening statement, said to the jury:

"You will entirely eliminate from your mind the statements made by counsel for the plaintiff as to the family of the deceased, William E. Greene. Those matters are out of the case and you will not consider them, but cast them from your minds entirely."

This caution, while not given at the time objection was made, was given after the testimony of the first witness, and conformed to the prior request made by counsel for defendant. We consider that this caution to the jury was sufficient.

As to the reference to scalding, no objection was made to any remarks in the opening statement. On page 164 of the record, witness Blue, the engineer

on the train which struck the engine which decedent
was operating, testified that Greene was scalded,
and there was testimony as to quantities of steam
around the overturned engine. Objection was
raised to any reference to this during the closing
argument of counsel for plaintiff, and the court,
on page 321, stated to the jury:

"I will say to the jury that, since there is no
evidence that Mr. Greene was scalded to death at
that point, at that time, you must disregard that
statement of counsel."

The question of the absence of an interlocking
circuit south of the intersection has been heretofore
discussed.

The reference to the opportunities for advance-
ment and the mention of persons who had pro-
gressed to high positions in the railroad service
were made in the closing argument of counsel for
plaintiff but no objection was interposed, nor was
the court requested to instruct the jury on this
matter. In view of this state of the record, we
do not find that there was such misconduct of
counsel as to constitute prejudicial error.

Probably the point most stressed by plaintiff in
error was as to the damages awarded.

It is claimed that the verdict was excessive, ap-
pearing to have been given under the influence of
passion or prejudice, that the damages were ex-
cessive and contrary to the law of Kentucky govern-
ing the measure of damages, and that they were
estimated upon an erroneous and illegal basis.

The evidence discloses that the decedent was 33
years of age, earning about $2,200 per year, that
his expectancy of life, according to mortality tables,
was between 32 and 33 years. He was sober, in-

dustrious, in good health, and in line for promotion. The accident, having occurred in Kentucky, the law of that state governs as to liability and the measure of damages.

The rule governing damages in a death case in Kentucky is set forth in defendant's answer and has been heretofore quoted.

In the general charge of the court this rule is stated as follows:

"If you find for the plaintiff under the instructions of the court, you will award as damages such sum, not exceeding the amount claimed in the petition, as you find will fairly and reasonably compensate the estate of the decedent for the destruction of his power to earn money, and in arriving at this amount the jury is authorized to consider all the testimony bearing on that subject. The rule just stated to you is the only rule which may be applied in this case, in case, of course, you find for the plaintiff, and no consideration may be given by you to any other measure of damages except the one stated—that is, that if you find for the plaintiff, you will award such sum as damages as will fairly and reasonably compensate the estate of the decedent for the destruction of his power to earn money."

This is a correct statement of the rule, and no additional or other charge was requested on this subject.

In the case of *Cincinnati, N. O. & T. P. Ry. Co.* v. *Lovell's Admr.*, 141 Ky., 249, 132 S. W., 569, 47 L. R. A., (N. S.), 909, the rule is thus stated and discussed, beginning on page 261, (132 S. W., 574):

" 'If your finding be for the plaintiff, then you will find such a sum in damages as you may be-

lieve from the evidence will reasonably compensate the estate of Jeff. Lovell, deceased, for the destruction of his power to earn money, not exceeding however the amount of $30,000, the sum claimed in the petition.'

"This instruction has been so frequently and uniformly approved that it does not seem necessary that we should extend this opinion in an effort to sustain it. But, in response to the argument against it submitted by counsel for plaintiff in error, we may say this: In estimating compensatory damages in cases like this, the jury may receive evidence concerning, and have the right to consider, the habits, character, physical condition, earning capacity, and probable duration of life of the deceased. They are allowed to have this data before them so that they may approximately, at least, fix the recovery at such a sum as will compensate the estate of the deceased for the destruction of his power to earn money. The loss to his estate is the amount that he will probably make and save if he should live the full limit of his expectancy of life. It would be unjust to the estate of the deceased if this loss was estimated on the theory that he would not increase his earning capacity, or that he would not make or save more than he was making or saving at the time of his death. It is, of course, probable that had Lovell lived to be an old man his earning capacity would not have increased, and that his estate would have been worth but little when he died; but it is equally, if not more, probable that a young man of his habits and character would increase his earning capacity each year for many years, and in the end have an estate much larger than the

amount awarded by the jury. Of course, how long a person will live, or how much he will earn, or how much he will save, or how much he will leave at his death, are in the very necessity of things unknown problems. No human being can tell how long any person will live, and consequently no person can say how much his estate from a pecuniary standpoint will lose by his death. But, in compensating the estate of a person who has been killed by negligence for the destruction of his power to earn money, it is more just and reasonable to assume that he will live the allotted time, and that he will observe habits of thrift and industry, than it is to assume that he will be stricken with disease, or become idle and worthless, or die, many years before his expectancy of life has ended. * * * When the jury has before it all the evidence that either party desires to introduce, relating to the health, habits, earning capacity, character, and probable duration of life of the deceased, and are then directed to assess the damages at such a sum as will compensate his estate for the destruction of his power to earn money, they have before them every fact upon which an estimate of the loss sustained can be based, and it is to be presumed that in making up their verdict the jury will take into consideration all of the facts indicated.''

The briefs of counsel contain a discussion of whether or not the jury might have included punitive damages in the verdict. No allegations are contained in the petition to warrant the recovery of punitive damages, nor were punitive damages asked for. The measure of damages as charged by the

court did not refer to punitive damages, hence we do not consider that the jury intended to or did include any damages other than compensatory.

If the verdict was given under the influence of passion and prejudice, it would become the duty of the court to set it aside, and not grant a remittitur. This rule does not need the citation of authorities.

From an examination of the record, however, it does not appear that the verdict is the result of prejudice or passion.

We come, then, to the question whether or not it was excessive. The court of common pleas found it was, and granted a remittitur of $20,000. The right to recover being by virtue of the law of Kentucky, the damages are to be governed by the law of that state. Many decisions are referred to by counsel for both parties in reference to whether or not such a verdict would be excessive in Kentucky, and specific cases are cited where lesser amounts were not allowed to stand. It would be impossible to arrive at a definite amount with any reasonable certainty.

The cases cited as to what amounts have been held to be excessive, varying as they do in so many ways, both as to age, earning power, etc., cannot be accepted as a definite guide. Many of these cases were decided at a time when the purchasing power of money was vastly different from what it is today.

Taking into consideration the decedent's age, habits, industry, health, and prospects, we do not find that the amount as finally allowed by the court is excessive.

Finding no error prejudicial to the plaintiff in

error, the judgment of the court of common pleas
will be affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and CUSHING, J., concur.